UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAROC FRUIT BOARD S.A. ET AL., | * |
| Plaintiffs, | * |
| v. | * Civil Action No. 1:10-10306-JLT |
| M/V VINSON, HER ENGINES, MACHINERY, TACKLE, APPAREL, APPURTENANCES, ETC, IN REM ET AL., | * |
| Defendants. | * |

MEMORANDUM

July 11, 2012

TAURO, J.

I.  Introduction

On June 13, 2012, this court held a hearing on Defendant Navimar's Motion to Dismiss Without Prejudice or Stay C.A. No. 11-10289 [#60]. For the reasons set forth below, Defendant Navimar's Motion is DENIED.

II.  Background

A.  Factual Background

The underlying facts of this case concern a shipment of citrus fruit from Morocco to New Bedford, Massachusetts, which Plaintiffs allege arrived in a moldy condition.[1] Plaintiffs, the owners of the citrus fruit, initially brought suit against the vessel and the vessel owner in

---

[1] Compl. [#1] at 2-4.

February 2010.² Plaintiffs subsequently brought this case against Navimar in February of 2011, but did not attempt service of process until November of that year.³ Defendant Navimar was the voyage charterer for the vessel, and did not play a role in the operation of the ship.⁴ This court allowed Plaintiff's motion to consolidate the two cases on November 28, 2011.⁵

In its Answer, Defendant Navimar asserted that this case must be stayed or dismissed without prejudice in order to allow for arbitration.⁶ On May 19, 2012, Defendant Navimar filed a Motion to Dismiss Without Prejudice or Stay CA No. 11-10289 and Refer Plaintiff's Claims Against Navimar to Arbitration [#60]. Their motion is currently at issue.

III.  Discussion

In the Complaint, Plaintiffs base their claims on the terms and conditions of the bills of lading that governed the shipment of citrus fruit. Each bill of lading contains the following "(i) at the top right [the statement] that it is a 'Bill of lading to be used with Charter-Parties,' (ii) at the lower center left that, 'Freight payable as per Charter-Party dated Lysaker 19th January 2010,' and (iii) at the lower center right that, 'FOR CONDITIONS OF CARRIAGE SEE OVERLEAF.'"⁷ The "Conditions of Carriage" incorporate "[a]ll terms and conditions, liberties and exceptions of the Charter Party . . . including the Law and Arbitration Clause."⁸

---

²See Compl. [#1].

³C.A. 11-10289, [#1].

⁴Id. at 2; Def's Mem. in Supp. [#61] at 2.

⁵Order [#46].

⁶Answer, C.A. 11-10289 [#6] at 5.

⁷Def.'s Mot. in Supp. [#61] at 3, & Pl's Mem. in Opp. Ex. A [#64-1].

⁸Def.'s Mem. in Supp. [#61] at 3-4 & Pl's Mem. in Opp. Ex. A [#64-1].

The Arbitration Clause reads as follows:

> Any dispute arising under this Charter Party to be referred to the arbitration in London, according to English Law, one arbitrator to be nominated by the Owners and the other by the Charterers, and in case the arbitrators shall not agree then to the decision of an Umpire to be appointed by them the award of the arbitrators or the umpire to be final and binding upon both parties.[9]

The parties do not dispute the contents of the arbitration clause or the manner in which it is referenced in the bill of lading. The question, rather, is whether the arbitration clause contained in the charter party agreement, incorporated as it is into the bill of lading, is enforceable against Plaintiffs in the present action.

The validity of agreements to arbitrate entered into between parties from different countries is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.[10] The Convention is implemented by Chapter Two of the Federal Arbitration Act.[11] The Convention as set forth in Chapter Two of the Federal Arbitration Act requires, as a preliminary matter, that an arbitration clause be part of an "agreement in writing" in order to be enforceable.[12] An "agreement in writing" is defined in Article II, § 2 of the Convention as "'an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters

---

[9] Id. at 3-4.

[10] June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (entered into force with respect to the United States, Dec. 29, 1970). (hereinafter the "Convention.").

[11] DiMercurio v. Sphere Drake Insurance, PLC, 202 F.3d 71, 74 (1st Cir. 2000).

[12] 9 U.S.C. §§ 201-08; see AGP Indust. SA, (Peru) v. JPS Elastometrics Corp., 511 F. Supp. 2d 212, 214-15 (D. Mass. 2007).

3

or telegrams.'"[13]

As this court has previously noted, the language of Article II, § 2 of the Convention can be read in two ways.

> This language could be read to mean that agreements in writing can be arbitral clauses in contracts or they can be arbitration agreements that have been signed by both parties or are contained in a[n] exchange of letters or telegrams. Or it could be read to mean that an agreement in writing is one signed by the parties or contained in an exchange of letters or telegrams, whether it is a clause in a larger contract or a separate arbitration agreement.[14]

While the First Circuit has not yet addressed this matter, the Second circuit, in Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd. ("Kahn Lucas"), interpreted Article II, § 2 to require "both 'an arbitral clause in a contract' and 'an arbitration agreement' [to] be 'signed by the parties or contained in an exchange of letters or telegrams.'"[15] This is in stark contrast to the Fifth Circuit's approach to the same problem, where it found that Article II, § 2 requires only that an arbitration clause be contained in a contract or by an arbitration agreement signed by the parties or contained in an exchange of letters or telegrams.[16]

The Second Circuit's reasoning in the Kahn Lucas case is highly persuasive. There, the court undertook a detailed analysis of the text of the English, French, and Spanish versions of the Convention, in addition to the legislative history, and concluded that the "definition of

---

[13]AGP Industries, 511 F. Supp. 2d at 214 (quoting Kahn Lucas Lancaster, Inc. V. Lark Int'l, Ltd., 186 F.3d 210, 218 (2d Cir. 1999) abrogated on other grounds as recognized in Sarhank Group v. Oracle Corp., 404 F.3d 657, 660, n.2 (2d Cir. 2005)).

[14]AGP Industries, 511 F. Supp. 2d at 214.

[15]Id. (quoting Kahn Lucas 186 F.3d at 218).

[16]Sphere Drake Ins., PLC v. Marine Towing, Inc., 16 F.3d 666, 669 (5th Cir. 1994).

'agreement in writing' in the Convention requires that such an agreement, whether it be an arbitration agreement or an arbitral clause in a contract, be signed by the parties or contained in a series of letters or telegrams."[17] In AGP Industries, Judge Ponsor of this court adopted the Second Circuit's interpretation of the Convention.[18] This court does the same.

Here, Plaintiff was the shipper of the cargo pursuant to bills of lading issued by Defendant Navimar.[19] Defendant Navimar signed the bills of lading as voyage charterer on behalf of the Master of the M/V VINSON.[20] The arbitration clause is contained in the charter party agreement between Defendant Agder and Defendant Navimar, and is incorporated by reference into the bill of lading, upon which Plaintiff sues.[21] Ordinarily, such an arbitration clause would be binding, if validly incorporated.[22] The bill of lading here, while it forms the contract between Plaintiff and Defendants, is more akin to a receipt than an agreement or an exchange of letters or telegrams. As Professor Martin Davies noted in his article in the Journal of Maritime Law and Commerce, "[w]hen a bill of lading is issued to a charterer as shipper, it serves only as a receipt and a document entitling the holder to possession; it does not vary the pre-existing charterparty contract between the charterer and the shipowner."[23] As such, the bill

---

[17] Kahn Lucas, 186 F.3d at 215.

[18] AGP Industries, 511 F. Supp. 2d at 214-15.

[19] Gandrup Dec. [#64] at ¶ 6 & Ex. A.

[20] Id.

[21] Id. at ¶ 8 & Ex. C; see Ex. B, Request no. 2.

[22] See, e.g., DiMercurio, 202 F.3d at 74 (stating that an arbitration agreement under Chapter Two is "enforceable under the Convention unless it is null and void, inoperative or incapable of being performed.") (internal citations and quotations omitted).

[23] Martin Davies, Litigation Fights Back, 35 J. Mar. L. & Com. 617, 626 (2004).

of lading in this case was never signed by Plaintiff, and does not amount to an "exchange of letters or telegrams," and so fails to constitute an "agreement in writing" under the Convention.[24]

Plaintiff is, therefore, not bound by the arbitration clause contained in the charter party agreement because the bill of lading does not meet the requirements for an "agreement in writing" under Chapter Two. While Defendant Navimar urges this court to follow the Sky Reefer line of cases,[25] those are inapposite because they are interpreting Chapter One of the Federal Arbitration Act. As stated above, Chapter Two of the Federal Arbitration Act, which incorporates the Convention, governs this action because all parties are foreign.[26]

Following the reasoning of the Second Circuit in Kahn Lucas, it also becomes clear that Defendant's argument that Plaintiff cannot both sue upon the bill of lading and simultaneously claim that the arbitration agreement incorporated therein is void, is unavailing. The question of whether the arbitration agreement would be enforceable under contract principles is superceded

---

[24] See, e.g., AGP Industries, 511 F. Supp. 2d at 213-15 (finding arbitration clause incorporated on the back of invoice forms did not amount to a signed contract or an exchange of letters or telegrams, and was, therefore, insufficient to constitute an "agreement in writing"); see also Kahn Lucas, 186 F.3d at 218 (finding that arbitration clauses contained in purchase orders not signed by both parties were not an "agreement in writing" because they were not in a signed contract or contained in an exchange of letters or telegrams.).

[25] Def.'s Mem. in Supp. [#61] at 4-6; Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER, 515 U.S. 528 (1995). The SKY REEFER line of cases applied Chapter One of the Federal Arbitration Act, codified at 9 U.S.C. §§ 1-16, originally enacted in 1925. Chapter Two of the Federal Arbitration Act, codified at 9 U.S.C. §§ 201-08, as noted above, incorporates the 1958 Convention into United States law. As Chapter Two specifically applies to international commercial contracts, and was adopted later in time than Chapter One, it undoubtedly governs the dispute in this case. See AGP Industries, 511 F. Supp. 2d at 214 (citing DiMercurio, 202 F.3d at 74).

[26] AGP Industries, 511 F. Supp. 2d at 214 (citing DiMercurio, 202 F.3d at 74); see also Standard Bent Glass Corp. v. Glassrobots OY, 333 F.3d 440, 448-49 (3rd Cir. 2003).

by the court's preliminary inquiry into whether it is contained in an "agreement in writing."[23] Here, because there is no agreement in writing under the Convention, the court does not reach the question of whether the arbitration agreement would otherwise be binding. Plaintiff's claims are, therefore, not subject to compulsory arbitration.

IV.  Conclusion

For the foregoing reasons, Defendant Navimar's Motion to Dismiss Without Prejudice or Stay C.A. No. 11-10289 [#60] is DENIED.

AN ORDER HAS BEEN ISSUED.

/s/ J. Tauro
United States District Judge

---

[23] See AGP Industries, 511 F. Supp. 2d at 214 & n. 2, (finding that a court has jurisdiction to enforce an arbitration agreement between international parties only if it finds, as a preliminary matter, that there is a written agreement to arbitrate the dispute.).